FILED
 2005 Sep-23  AM 10:44
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | | |
|---|---|---|---|
| **DANNY WAYNE JOHNSON,** | ) | | |
| | ) | | |
| **Defendant/Movant,** | ) | | |
| | ) | | |
| v. | ) | **Case Numbers:** | **CV 02-S-8055-NE** |
| | ) | | **CR 00-S-0397-NE** |
| **UNITED STATES OF AMERICA,** | ) | | |
| | ) | | |
| **Respondent.** | ) | | |

## MEMORANDUM OPINION

Before the court are the "Motion Requesting this Honorable Court to Take Judicial Notice Pursuant to Federal Rules of Civil Procedure Rule 60(b)(6)" (doc. no. 174) and the "Petition to Vacate Judgement [sic] Pursuant to Rule 60(b), F.R. Civ. P." (doc. no. 3) filed by defendant-petitioner, Danny Wayne Johnson.[1] In the first motion, petitioner alleges that, premised on new evidence provided by the United States after sentencing, as well as new case law, the two-point enhancement for possessing firearms that was imposed on the drug charges in this case is due to be corrected. (doc. no. 174 at 1). In the second pleading, he asserts that the criminal judgment against him is due to be "vacated in light of the recent decision in Booker[2]

---

[1] Document 174 is located in *United States v. Danny Wayne Johnson*, 5:00-cr-00397-CLS-JEO. Documents from this case are referenced herein as "Cr. Doc. ___." Document 3 is located in *Danny Wayne Johnson v. United States*, 5:02-cv-08055-CLS-JEO. Documents from the civil case are referenced herein as "Cv. Doc. ___." All the documents, however, are physically located in the criminal file.

[2] *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).



overruling the previous precedents of this Circuit and establishing a bona fide constitutional violation." (Doc. no. 3 at 7). For the reasons stated below, the motion and the petition are due to be denied.

## BACKGROUND

The defendant and his co-defendant, Jimmy Dean Gibson, were indicted on November 1, 2000, in a six-count indictment. (Cr. doc. no. 1). The charges allege various drug violations by both defendants. Johnson was charged in Count One with conspiring to manufacture, possess, and distribute methamphetamine. Count Two charged both with manufacturing more than fifty (50) grams of methamphetamine. Johnson was not charged in the remaining counts.

The case was tried before a jury commencing on February 5, 2000. The jury found both defendants guilty as charged on all counts of the indictment on February 9, 2000.

A presentence investigation report was ordered by the court and prepared by the United States Probation Office in this case. A sentencing hearing was held on April 20, 2001. Gibson was sentenced to a term of life imprisonment as to counts one, two, and three and thirty (30) years on the remaining counts. Petitioner, Danny Wayne Johnson was sentenced to a term of 188 months imprisonment.

Defendant Johnson appealed his sentence and conviction on April 23, 2001.

(Cr. doc. no. 95). While the appeal was pending, he also filed a motion for a new trial. (Cr. doc. no. 127). He alleged that a prosecution witness, Tina Ballard, testified falsely at trial. (*Id*.). The court conducted an evidentiary hearing atwhich Ballard testified. The court denied the motion following the hearing. (Cr. doc. no. 136). The defendant's conviction and sentence were affirmed by the Eleventh Circuit Court of Appeals on January 7, 2002. (Cr. doc. no. 137).

The Clerk of the Court received petitioner's motion to vacate, set aside, or correct sentence on October 7, 2002. (Cr. doc. no. 146). Petitioner asserted that his sentence was due to be corrected because (1) the court erred by imposing the two point firearm enhancement due to the fact that weapons were recovered at his residence; (2) the court improperly applied the 2000 edition of the United States Sentencing Guidelines Manual; (3) his counsel was ineffective due to the fact that he failed to challenge the court's use of the 2000 edition of the manual to calculate his sentence; (4) the court wrongly sentenced him to a five year term of supervised release; (5) his counsel was ineffective for failing to object to the court's calculation of his supervised release; (6) his counsel was ineffective because the court wrongly attributed the seizure of "d-pseudoehdrine hydrochloride" in calculating his sentence; (7) his counsel was ineffective in failing to object to the amount of methamphetamine attributed to him at sentencing; (8) the Attorney General of the United States

improperly reclassified powder methamphetamine as a schedule II drug; and (9) his counsel was ineffective for failing to object to the improper reclassification. (*Id*. at 4-7). The United States was required to respond to the defendant's allegations. (Cr. doc. no. 147). The court denied the motion, finding as follows:

> [t]he judgment of conviction was rendered with jurisdiction, the sentence imposed was authorized by law and Guidelines promulgated by the United States Sentencing Commission, and there has been no denial or infringement of the constitutional rights of the defendant that would render the underlying judgment vulnerable to collateral attack.

(Cr. doc. no. 151). Johnson filed a motion for reconsideration, which was denied. (Cr. doc. nos. 152 and 153). Johnson then filed a motion for a certificate of appealability, which was also denied by this court. (Cr. doc. no. 156).

Johnson next filed a motion for a certificate of appealability with the Eleventh Circuit Court of Appeals. The Court denied the motion, finding that petitioner had "failed to make a substantial showing of the denial of a constitutional right." (Cr. doc. no. 170 at 5). Johnson then filed a motion for reconsideration, which also was denied. By the appellate court (Cr. doc. no. 172). The Eleventh Circuit stated that petitioner had failed to make the requisite showing, and that, "[c]ontrary to appellant's assertion, this Court addressed and rejected previously his challenge to his 2-level firearm enhancement." (*Id*.).

On February 9, 2004, Johnson filed a "Motion Requesting this Honorable Court

to Take Judicial Notice Pursuant to Federal Rules of Civil Procedure Rule 60(b)(6)." (Cr. doc. no. 174).  Therein, he alleges that, premised on new evidence provided by the United States and new case law, the two-point enhancement for the firearm is due to be corrected.  (*Id*. at 1).  On February 10, 2005, he filed a "Petition to Vacate Judgement [sic] Pursuant to Rule 60(b), F.R. Civ. P." relying on *Booker*.  (Cv. doc. no. 3).  The United States filed a response asserting that the motion was due to be denied because *Booker* issues are not appropriate for collateral review.  (Cv. doc. no. 4 at 1).

## DISCUSSION

The initial question in this matter is whether the defendant's motion and petition, filed pursuant to Federal Rule of Civil Procedure 60(b), are an appropriate means for presenting his claims, or are the pleadings improper successive motions precluded by 28 U.S.C. § 2255.

Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence.[3]  Rule

---

[3] Rule 60(b) provides in relevant part:

"On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct of an adverse

60(b)(6), the particular provision under which [the] petitioner brought his [claims], permits reopening when the movant shows "any . . . reason justifying relief from the operation of the judgment" other than the more specific circumstances set out in Rules 60(b)(1)-(5).

*Gonzalez v. Crosby*, ___ U.S. ___, 125 S. Ct. 2641, 2645-46 (2005). In *Gonzalez*, the United States Supreme Court recently held, in pertinent part, that "a Rule 60(b)(6) motion in a § 2254 case is not to be treated as a successive habeas petition if it does not assert, or reassert, claims of error in the movant's state conviction."[4] *Id.*, 125 S. Ct. at 2651. The Court also stated that to justify the reopening of a final judgment pursuant to Rule 60(b)(6), the movant must show "extraordinary circumstances." *Id.* at 2649.

In the present case, the defendant clearly is making substantive claims concerning his sentence. He states in the first motion that there is nothing connecting the possession of the weapons to any drug offense. (Cr. doc. no. 174 at 1 and 6). In

---

party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

[4]The Court was also careful to note that its holding was limited to cases under § 2254 because although § 2255 is similar to, and refers to, the statutory subsection applicable to second or successive § 2254 petitions, it is not identical. *Id.* at 2646 n.2.

the second motion, he states that the *Booker* decision "overruled the prior precedents underpinning the jurisprudence that mandated my § 2255 motion being denied." (Cv. doc. no. 3 at 1). Although he states that he is only requesting that the previous judgment on the § 2255 motion be vacated, that would provide him no substantive relief without a concomitant review of the merits of the claim previously resolved by this court. (*Id*. at 7). Accordingly, the court finds to the extent that the defendant seeks additional substantive review of his sentence, this matter is precluded.

Even if this court were to determine that petitioner's claims should be deemed to be properly filed under Rule 60(b)(6), he still does not qualify for further review because there is no showing of "extraordinary circumstances." *Gonzalez*, 125 S. Ct. at 2649. The defendant did not seek certiorari review by the Supreme Court following the denial of relief by the Eleventh Circuit Court of Appeals in September of 2003. Additionally, the defendant's original claim regarding the two point enhancement did not include any *Booker* type claim. These facts demonstrate the absence of "extraordinary circumstances" justifying relief from the court's previous ruling.

The court further finds that, even if it were to again address the merits of the defendant's claim, he is entitled to no relief. As already noted, he asserts that there is nothing establishing that the guns that were recovered, and ultimately released, by

the United States[5] were connected to drug trafficking.

To place this assertion in context, it is necessary to review the pertinent facts. As noted in the presentence report, in about December 1999, the Federal Bureau of Investigation received information that codefedant Jimmy Dean Gibson and others were involved in the manufacture of methamphetamine. (PSR at ¶ 6). Through the use of a cooperating witness, law enforcement made controlled purchases of methamphetamine from Gibson. The presentence report reflects the following concerning a meeting in which Johnson was present:

> During another meeting between Gibson and Swann on January 27, 2000, at Gibson's apartment, Swann observed Gibson's cousin, **Danny Johnson**, deliver a pistol to Gibson. **Johnson** told Gibson, upon delivery of the firearm, that the weapon was so reliable that the gun would "shoot underwater." **Johnson** also mentioned that the "silencer" for the gun had not yet arrived. Swann later advised investigating agents that both Gibson and **Johnson** made comments indicating that they were upset and nervous because two of Gibson's couriers of methamphetamine (Stanley Smith and Andrea Smith) had been arrested in the state of Michigan on January 26, 2000. Gibson commented to Swann that **Johnson's** daughter was talking to people about his manufacture of methamphetamine at **Johnson's** trailer. Gibson mentioned "cough syrup" as his code word for methamphetamine. Gibson related that he was afraid he would soon be arrested. He told Swann that if he got arrested for his drug activity, he would be "gone this time," indicating his knowledge that the third felony drug conviction resulted in life imprisonment. During this meeting, Gibson produced a large bag containing what appeared to be approximately three to five pounds of a flat, rock-like substance the color of peanut butter. Swann was informed by Gibson that he had retrieved the substance from

---

[5]*See* document 143.

**Johnson's** mobile home earlier that day.

(PSR at ¶ 11 (emphasis in original)). Additionally, the report and record reflect that a search of Johnson's residence by federal authorities disclosed the following:

> An operational methamphetamine laboratory was found at **Johnson's** residence with all the necessary glassware, equipment, and chemicals. A residual amount of finished methamphetamine was found at the residence, as well as precursor chemicals: iodine, pseudoephedrine, and red phosphorous. In addition, boiling flasks, matches, receipts for large quantities of matches, lye, coffee filters containing methamphetamine residue, iodine bottles, alcohol, assorted rubber hoses and tubing, and various liquids and acids were found. Finally, thirteen firearms were found at **Johnson's** residence, including handguns and semi-automatic assault rifles. It should be noted that the equipment and supplies needed to manufacture methamphetamine were located throughout the home, in such locations as the defendant's clothes closet, in the kitchen cabinets, on top of the refrigerator, and on the headboard of the bed in the master bedroom.

(PSR at ¶ 15 (emphasis in original)).

When addressing the applicability of the two-point enhancement for possessing the weapons, the probation officer stated:

> Section 2D1.1(b)(1) provides for a two-level adjustment if a dangerous weapon (including a firearm) was possessed. Thirteen firearms which belonged to the defendant were found at his residence, where the methamphetamine was being manufactured. It is also known that Johnson brought a firearm to Gibson at his apartment on one occasion after two of Gibson's runners had been arrested and the defendants expressed concern that they might soon be arrested. This also indicates that the weapons were connected to the defendants' drug manufacturing and distribution activities. Application Note 3 to § 2D1.1 states that the enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. It further

>instructs that the adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. Because firearms were possessed in connection with the offense, the offense level has been increased by 2 levels pursuant to U.S.S.G. § 2D1.1(b)(1).

(PSR at ¶ 35). There were no objections from the defendant to the factual findings or the discussion concerning the application of the two-point adjustment. At sentencing, the court found that it could not conclude that the weapons were not connected to the drug offense. The undersigned further stated that "it is probable that they were" connected. (Sentencing Tr. at 4-5).[6]

The court sees no reason to depart from its previous conclusion denying relief. To the extent that the defendant asserts that the circumstances have changed because the United States permitted the defendant to make arrangements for the return of the weapons to a non-felon family member, the court does not find that fact to be significant. The United States provided in its response only that the weapons had not been forfeited, were not used as evidence, and were not the basis of the felony charges. (Cr. doc. no. 143). It in no way suggested, much less conceded, that the weapons were unrelated for Sentencing Guidelines purposes. Additionally, the magistrate judge required that the weapons be surrendered to a non-felon and ordered that the defendant not have any "contact, custody, or other control over said firearms

---

[6]The sentencing transcript is located at document 112.

upon release from custody and that the firearms be stored or maintained at a location separate and apart from the defendant" upon his release. (Cr. doc. no 144).[7]

## CONCLUSION

Premised on the foregoing, the court finds that the defendant's motion and petition are due to be denied. An appropriate order will be entered.

**DONE** this 22nd day of September, 2005.

_____
United States District Judge

---

[7]The citations provided by the defendant in his initial motion (Cr. Doc. 174 at pp. 6-7) are factually and legally distinguishable. Additionally, his reliance on *Booker* in the second pleading is misplaced because the Eleventh Circuit has clearly held that the holdings in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) and *Booker* do not apply retroactively to cases on collateral review. *See Alcide v. United States*, \_\_\_ F.3d \_\_\_, 2005 WL 1692498 (11th Cir. July 21, 2005) (citing *Varela v. United States*, 400 F.3d 864 (11th Cir. 2005)).